FILED

February 14, 2018

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time 9:09 AM



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT MURFREESBORO

| | | |
|---|---|---|
| **SHERRY CREASMAN,** | ) | **Docket No. 2017-05-0843** |
| **Employee,** | ) | |
| **v.** | ) | |
| **WAVES, INC.,** | ) | **State File No. 3990-2017** |
| **Employer,** | ) | |
| **And** | ) | |
| **STARNETT INS. CO.,** | ) | **Judge Dale Tipps** |
| **Insurance Carrier.** | ) | |
| | ) | |

---

## EXPEDITED HEARING ORDER GRANTING BENEFITS

---

This matter came before the Court on January 31, 2018, for an Expedited Hearing. The present focus of this case is whether Ms. Creasman is entitled to additional medical benefits in the form of psychiatric treatment and payment of her emergency hospitalization expenses.[1] For the reasons set forth below, the Court holds Ms. Creasman is entitled to a psychiatric panel and payment of her medical expenses.

### History of Claim

Ms. Creasman suffered injuries while working in a Waves, Inc. group home for adults with developmental disabilities. On January 15, 2017, a client in the home assaulted her, striking her repeatedly in the head. Ms. Creasman called her supervisor and reported the attack. She requested medical treatment two days later and selected Vanderbilt Walk-In Clinic from a panel.

At Vanderbilt, Ms. Creasman saw Dr. Lynn Holliday and reported pain, nausea, lightheadedness, and nightmares. Dr. Holliday assessed a tension-type headache. Noting Ms. Creasman's history of anxiety, nightmares, and paranoid thoughts, Dr.

---

[1] Ms. Creasman also sought attorney fees and expenses. To address the concerns raised in *Thompson v. Comcast Corp.*, 2018 TN Wrk. Comp. App. Bd. LEXIS 1, at *36-51 (Jan. 30, 2018), the Court instructed counsel to file any fee requests after the Court issued this Expedited Hearing Order.

1

Holliday also diagnosed post-traumatic stress disorder (PTSD). She noted that Ms. Creasman was already taking sertraline for anxiety before the attack. She recommended assignment to a different work location. She also stated, "Counseling to debrief from this assault is very important to initiate ASAP and I'm requesting that workman's comp assist with finding counseling for her ASAP."

Ms. Creasman returned to Dr. Holliday a few days later, reporting that the thought of returning to work scared her and that she was concerned it might cause a "mental breakdown." Dr. Holliday noted that Ms. Creasman was tearful and visibly anxious and that her affect was flat, "much different than last week." She prescribed clonazepam, recommended a neuropsych evaluation and reiterated that Ms. Creasman needed counseling.

On later visits to Vanderbilt, Ms. Creasman saw Dr. Samuel Perry, who noted she had been referred to a neuropsychologist, and he kept her off work until that evaluation. He ordered a brain MRI and made a neurology referral.

Waves authorized treatment with a neurologist, Dr. Subir Prasad. He saw Ms. Creasman on February 23 and diagnosed post-traumatic headache and post-concussion syndrome.

On February 27, Ms. Creasman's relatives found her unconscious and called an ambulance. She stayed in Williamson Medical Center for several days because of an overdose. The hospital records indicate this was accidental and resulted from Ms. Creasman being unaware that some of her prescriptions were duplicative. She testified that she had no intent to harm herself and that she had simply taken all her medicines as prescribed.

Also based on Dr. Perry's referral, Waves authorized a neuropsychological evaluation for Ms. Creasman with James Walker, Ph.D. After interviewing Ms. Creasman and administering several tests, Dr. Walker concluded that she did not suffer a significant head injury. He also felt her complaints were excessive, and he questioned her description of the assault. He felt a portion of her emotional reaction was related to her work, but "the actual work assault . . . represents only one of many work-related stressors." Dr. Walker stated that much of Ms. Creasman's current distress was related to her history of mental illness and several past events. He recommended psychotherapy with a qualified psychologist.

Waves' carrier sent a letter to Dr. Walker asking whether he believed Ms. Creasman's employment contributed more than fifty percent to her need for ongoing medical treatment. He responded "No," and explained, "Related to her employment, yes, but not the specific assault."

Ms. Creasman returned to Dr. Prasad, who continued to treat her for post-traumatic headache and post-concussion syndrome. When she saw Dr. Prasad on October 9, he agreed Ms. Creasman's anxiety was a significant issue and recommended a psychiatric referral. In response to a letter from Waves' carrier, Dr. Prasad again recommended psychiatric treatment for anxiety and depression, but he indicated he did not believe her current medical condition arose primarily out of her employment with Waves. At an examination in January 2018, Dr. Prasad's diagnosis was anxiety and depression. After the case manager advised him that the carrier would not pay for psychiatric care, Dr. Prasad encouraged Ms. Creasman to "use her own insurance to seek psychiatric care and counseling ASAP."

Ms. Creasman sought an independent evaluation with a psychiatrist, Dr. Greg Kyser. He concluded that her workplace assault caused a deterioration of her underlying depression and anxiety. He noted: "Her current psychiatric difficulties are directly attributable to her work injury and at least 51% causally related to the trauma. Were it not for this traumatic event, she would not be suffering her current psychiatric difficulties." Dr. Kyser also felt that Ms. Creasman's hospitalization was directly related to her treatment for the work injury.

Ms. Creasman requested that the Court order Waves to provide psychiatric treatment with Dr. Kyser or provide a panel from which she may select a treating psychiatrist. She also requested payment of the medical bills she incurred because of her accidental overdose.

Waves acknowledged the compensability of Ms. Creasman's claim. Further, it acknowledged her need for psychiatric treatment but disputed that her work injury primarily caused that need. Waves questioned whether the overdose was accidental and argued that this means Ms. Creasman failed to establish a causal connection between her work injury and her hospitalization.

### Findings of Fact and Conclusions of Law

Ms. Creasman need not prove every element of her claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. Instead, she must come forward with sufficient evidence from which this Court might determine she is likely to prevail at a hearing on the merits. *See* Tenn. Code Ann. § 50-6-239(d)(1) (2017); *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015). In order to prevail at such a hearing, Ms. Creasman must prove "to a reasonable degree of medical certainty that [her work injury] contributed more than fifty percent (50%) in causing the . . . need for medical treatment, considering all causes." Tenn. Code Ann. § 50-6-102(14)(C).

*Psychiatric Treatment*

Under the Workers' Compensation Law, "the employer or the employer's agent shall furnish, free of charge to the employee, such medical and surgical treatment . . . made reasonably necessary by accident[.]" Tenn. Code Ann. § 50-6-204(a)(1)(A). Employers are also required to offer a panel of physicians "from which the injured employee shall select one (1) to be the treating physician." *See* Tenn. Code Ann. § 50-6-204(a)(3)(A)(i).

Although Dr. Prasad recommended a psychiatric referral, he did not believe the need for that referral arose primarily out of Ms. Creasman's employment with Waves. The parties agreed that Dr. Prasad is Ms. Creasman's authorized treating physician (ATP). Therefore, his opinion is presumed to be correct. *See* Tenn. Code Ann. § 50-6-102(14)(E). Thus, the question is whether Ms. Creasman submitted sufficient information to overcome this presumption.

To make this determination, the Court must compare the opinions of Dr. Prasad and Dr. Kyser.

> When the medical testimony differs, the trial judge must obviously choose which view to believe. In doing so, he is allowed, among other things, to consider the qualifications of the experts, the circumstances of their examination, the information available to them, and the evaluation of the importance of that information by other experts.

*Orman v. Williams Sonoma, Inc.*, 803 S.W.2d 672, 676 (Tenn. 1991).

The Court begins with the first factor. Dr. Kyser is a psychiatrist, while Dr. Prasad is a neurologist. In view of the fact that Dr. Prasad referred Ms. Creasman for psychiatric treatment, the Court finds Dr. Kyser's qualifications lend more weight to his opinion on psychiatric matters.

As to the other factors, the circumstances of the respective examinations are different. Ms. Creasman was an established patient with Dr. Prasad, while she only saw Dr. Kyser once. However, Dr. Kyser's report indicates that the information available to the doctors was comparable. The Court finds that the importance of that information weighs in favor of Dr. Kyser, who comprehensively documented his evaluative process and the information he considered.

Dr. Prasad's causation opinion consists of two checkmarks and two fill-in-the-blank responses on a letter from Waves' carrier. In response to the question of how his psychiatric referral "would be related to her 1/15/2017 injury," he wrote, "to treat anxiety/depression related to same." This shows that Dr. Prasad felt that Ms. Creasman's

4

work injury was at least partly responsible for her need for psychiatric treatment. However, his checkmark response indicated he did not believe that her employment contributed more than fifty percent to the need for ongoing medical treatment. This conclusion seems inconsistent with his treatment note of one month earlier when he repeated his request to the case manager for a psychiatric referral. Waves provided no information or explanation as to whether the causation letter actually represented a change in Dr. Prasad's opinion or, if so, why he changed his mind.

In contrast, Dr. Kyser's opinion is part of a comprehensive eight-page report that documented Ms. Creasman's medical, social, and psychiatric history. Dr. Kyser explained his conclusion by noting that, although Ms. Creasman had a long history of traumatic victimization and mental instability:

> [S]he has remained employed and relatively functional. At the time of her work injury, she was mentally stable and functioning well. Considering all causes, it is clear that the assault in question caused a deterioration and aggravation of her underlying depression, anxiety and posttraumatic symptoms. Her current psychiatric difficulties are directly attributable to her work injury and at least 51% causally related to the trauma. Were it not for this traumatic event, she would not be suffering her current psychiatric difficulties.

The testimony at the hearing supported Dr. Kyser's characterization of the change in Ms. Creasman's condition. Both Ms. Creasman and her sister testified that she was able to work and function before the assault and that her personality completely changed afterward. The Court finds this testimony credible and notes that it was uncontroverted.

In support of its denial of psychiatric treatment, Waves also relied on Dr. Walker's causation opinion. It argued that, because Tennessee Code Annotated section 50-6-204(h) expressly identifies psychologists as treating providers, the scope of their expertise extends to determining causation. Waves' position is inconsistent with the plain language of the statute, which requires causation to be shown to a reasonable degree of medical certainty. The statute defines this as: "in the opinion *of the physician*, it is more likely than not considering all causes, as opposed to speculation or possibility." Tenn. Code Ann. § 50-6-102(14)(D) (emphasis added). The testimony of a psychologist is not legally sufficient to establish causation and permanency of a mental injury. *See Gates v. Jackson Appliance Co.*, No. W1999-00743-SC-WCM-CV, 2001 Tenn. LEXIS 522, at *16 (June 27, 2001). Dr. Walker is a psychologist, not a physician, and thus has no statutory authority to give a causation opinion.[2]

---

[2] The Court only finds that Dr. Walker's opinion is inadmissible. It does not credit Ms. Creasman's contention that his evaluation was "junk science."

The Court thus has two medical opinions regarding causation. In conjunction with Ms. Creasman's uncontroverted testimony concerning her pre-assault condition, the Court finds Dr. Kyser's opinion more persuasive and further finds it successfully rebutted Dr. Prasad's opinion. Thus, the Court holds that Ms. Creasman is likely to prevail at a hearing on the merits that her current need for psychiatric treatment arose primarily out of her employment.[3]

Ms. Creasman requested the Court to designate Dr. Kyser as her treating physician. The Court notes that Dr. Kyser performed an independent evaluation of Ms. Creasman but did not provide any treatment. Therefore, the Court must decline her request and order a panel. *See Thompson v. Comcast Corp.*, 2018 TN Wrk. Comp. App. Bd. LEXIS 1, at *21-22 (Jan. 30, 2018).

*Hospital Expenses*

Ms. Creasman seeks payment of the medical expenses she incurred as result of her drug overdose. The general rule is that a subsequent injury, whether in the form of an aggravation of the original injury or a new and distinct injury, is compensable if it is the direct and natural result of a compensable injury. This "direct and natural consequences rule" means that all the medical consequences and sequelae that flow from the primary injury are compensable. *See Lee v. W. Plastics*, 2016 TN Wrk. Comp. App. Bd. LEXIS 53, at *6-7 (Oct. 20, 2016).

The medical records make it clear that, before the overdose, Ms. Creasman received treatment from several providers for her post-assault complaints. The records also document an accidental overdose of the prescriptions prescribed for her work injury. Waves contended that Ms. Creasman's negligence broke the chain of causation and was an independent, intervening injury. Alternatively, it also argued that the overdose might not have even been accidental. The problem with these arguments is that they are unsupported by any proof. As noted above, the medical records contain no suggestion of an intentional overdose or any negligence on the part of Ms. Creasman. Instead, they identify the problem as duplicative prescriptions from various providers. This conclusion is support by Ms. Creasman's unrebutted testimony that she took the medications exactly

---

[3] During the hearing, Waves also emphasized that when Ms. Creasman's providers first recommended counseling, she declined Waves' suggestion that she could contact the company's Employee Assistance Program (EAP) and request counseling. Ms. Creasman admitted she declined that offer, saying she felt the four-visit limit would limit the EAP's effectiveness. The Court understands Waves' concern as to whether Ms. Creasman's refusal of even this limited counseling was wise, but the EAP offer did nothing to excuse Waves from its statutory duties. Once the ATP referred Ms. Creasman to counseling, Waves was statutorily obligated to provide her with a panel of therapists for that treatment. Merely suggesting that Ms. Creasman could avail herself of an unrelated employee benefit, the EAP, did not constitute compliance with the statute. Further, the Court sees no connection between Ms. Creasman's refusal to participate in EAP counseling and whether she is entitled to psychiatric treatment the ATP recommended much later.

as her doctors prescribed.

Based on the foregoing, the Court finds that the overdose was a natural consequence flowing from the original injury and thus arose out of the employment. The Court therefore holds that Waves is responsible for the attendant medical expenses.

Waves argues that, if Ms. Creasman is entitled to recover for the emergency care, that recovery is limited to three hundred dollars. It bases this argument on Tennessee Code Annotated section 50-6-204(g)(1), which provides:

> If an emergency, or on account of the employer's failure or refusal to provide the medical care and services required by this law, *the injured employee or the injured employee's dependents may provide the medical care or services*, and the cost of the medical care and services, not exceeding three hundred dollars ($300), shall be borne by the employer[.]

(Emphasis added).

The Court disagrees with this interpretation of the statute, which does not say that all emergency treatment is limited to three hundred dollars. Instead, the plain language of this provision limits recovery of medical expenses to three hundred dollars *when the employee or his dependents are required to render care because of emergency or the employer's failure to provide care*. This is not the situation when the severity of the emergency compels an employee to summon an ambulance and seek care at a hospital.

Further, as the Appeals Board has stated:

> [The Court's] role in construing a statute is to ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope. To do so, we focus initially on the statute's words, giving these words their natural and ordinary meaning in light of their statutory context. We must avoid any forced or subtle construction that would limit or extend the meaning of the language. Every word in a statute is presumed to have meaning and purpose, and the statute must be construed in its entirety.

*Petty v. Convention Prod. Rigging*, 2016 TN Wrk. Comp. App. Bd. LEXIS 95, at *20 (Dec. 29, 2016). Accepting Waves' construction of this provision would virtually prohibit an employee from ever recovering medical expenses for legitimate emergency care. This would be contrary to the intent of the Workers' Compensation Law and the provisions of Section 204 cited above: "The employer or the employer's agent shall furnish, free of charge to the employee, such medical and surgical treatment . . . made reasonably necessary by accident[.]"

7

Neither Ms. Creasman nor her dependents provided medical care or services related to her accidental overdose. The Court therefore finds that Section 50-6-204(g)(1) is inapplicable in this case and holds that Waves is responsible for all medical expenses arising from this subsequent, natural consequence of her original injury.

**IT IS, THEREFORE, ORDERED** as follows:

1. Waves shall provide Ms. Creasman with a panel of psychiatrists and any medical treatment made reasonably necessary by her January 15, 2017 injury in accordance with Tennessee Code Annotated section 50-6-204, including payment of all related medical expenses associated with her February 27, 2017 hospitalization. Ms. Creasman or the medical providers shall furnish medical bills to Waves or its workers' compensation carrier.

2. This matter is set for a Scheduling Hearing on March 21, 2018, at 9:00 a.m. The parties must call 615-741-2112 or toll-free at 855-874-0473 to participate. Failure to call in may result in a determination of the issues without the parties' participation. All conferences are set using Central Time (CT).

3. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.

4. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email at WCCompliance.Program@tn.gov.

**ENTERED this the 14ᵗʰ day of February, 2018.**

_____
**Judge Dale Tipps**
**Court of Workers' Compensation Claims**

**APPENDIX**

Exhibits:
1. Affidavit of Sherry Creasman
2. Wage Statement
3. Agreed Exhibit List
4. Walk in Clinic record of January 23, 2017, and Key Risk letter of January 20, 2017
5. Supplemental Agreed Exhibit List
6. Physician panel
6. Petition for Benefit Determination and Dispute Certification Notice[4]
7. Walk-in Clinic record of January 17, 2017

Technical record:
1. Request for Expedited Hearing
2. Parties' Pre-Hearing Statements
3. Supplement to Employee's Pre-Hearing Statement
4. Second Supplement to Employee's Pre-Hearing Statement
5. Employee's Motion in Limine
6. Employer's Response to Motion in Limine
7. Parties' exhibit and witness lists

---

[4] The Court inadvertently marked two exhibits as number six.

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 14th day of February, 2018.

| Name | Certified Mail | Fax | Email | Service Sent to: |
|------|----------------|-----|-------|------------------|
| R. Steven Waldron, Employee's Attorney | | | X | arlenesmith@comcast.net |
| Michael Jones, Employer's Attorney | | | X | Mjones@wimberlylawson.com |

_____

**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**